UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARVIN D. LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18CV1595 SPM |
| | ) | |
| JENNIFER PRICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Marvin D. Love for leave to commence this civil action without prepayment of the filing fee. (Docket No. 3). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss all of plaintiff's official capacity claims, as well as the individual capacity claims against defendants Jeffery Jones, Tracy Price, and Lindsey Coffman. However, the Court will direct the Clerk of Court to issue process on defendants Jennifer Price, Nurse Tracy, and Will Hunter in their individual capacities.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-

month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

Plaintiff has not submitted an inmate account statement. In his application to proceed in forma pauperis, he states that he receives $5.00 a month from the state and that he currently owes money to the Department of Corrections. Based on this information, the Court will require plaintiff to pay an initial partial filing fee of $1.00, which is 20 percent of his income. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common

sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a convicted and sentenced state prisoner, presently incarcerated at Potosi Correctional Center in Mineral Point, Missouri. (Docket No. 1 at 2). He brings this action pursuant to 28 U.S.C. § 1983. His complaint names the following defendants: Functional Unit Manager (FUM) Jennifer Price; Extraction Team Members John Does 1-5; Caseworker Jeffery

Jones; Lieutenant Tracy Price; Nurse Tracy; Correctional Officer Lindsey Coffman; and Major Will Hunter. (Docket No. 1 at 2-6). Defendants are sued in both their official and individual capacities.

Plaintiff states that on March 10, 2018, he went on suicide watch and was placed in the prison hospital's "rubber room." (Docket No. 1 at 6). The following day, he was ordered by Major Hunter and FUM Price to be placed on Special Security Order. As part of this order, he was put on "alternate meal status," which consists of three 500-calorie bags a day. (Docket No. 1 at 6-7). Plaintiff alleges that he was forced to eat "bag food" for two months, which violated his religious diet. (Docket No. 1 at 7). He further alleges that Major Hunter and FUM Price ordered him "to eat with filthy hands" after he had urinated and defecated without washing his hands. (Docket No. 1 at 9). Major Hunter and FUM Price also ordered him to lie on the floor of his cell so his food could be thrown on the floor.

After being removed from suicide watch, plaintiff states that he was placed on "paper gown status" on March 11, 2018. (Docket No. 1 at 7). This paper gown allegedly left his genitals exposed. (Docket No. 1 at 8). He also alleges that for over a month, he was compelled to sleep on concrete, without any mattress or bedding; that he was denied hygiene, including showers; that he was denied mail; and that he was denied medical attention. (Docket No. 1 at 7). Plaintiff claims that he suffered from "serious back and shoulder problems" from sleeping on the concrete. (Docket No. 1 at 7-8). However, he was advised by a nurse that Major Hunter would not allow him to be assessed. (Docket No. 1 at 7).

On April 3, 2018, plaintiff claims that five members of the Extraction Team came into his cell while he was naked and beat him. (Docket No. 1 at 8). During this incident, he asserts that Correctional Officer Coffman held the camera but covered the lens so that the event could not be

captured. (Docket No. 1 at 9). He alleges that Nurse Tracy assessed him but refused to "document [the] blood coming from [his] mouth," or his injured shoulder and back. (Docket No. 1 at 8). According to plaintiff, Major Hunter and FUM Price instructed medical staff to deny him treatment after being beaten by the Extraction Team.

Plaintiff claims that Lieutenant Price instructed that plaintiff's cell be searched every day. He states that Caseworker Jones refused to give him "IRRs/grievances to file on [his] arbitrary treatment and [maiming]." (Docket No. 1 at 9). He also states that FUM Price took away his visits, even after his family had traveled to see him.

Plaintiff alleges that he has suffered shoulder and back injuries, as well as mental health issues and depression. (Docket No. 1 at 7). He is seeking $3,000,000 in damages. (Docket No. 1 at 10). He also wants the "guilty" parties to be fired, and for the Court to order surgery on his injured shoulder.

## Discussion

Plaintiff brings this action pursuant to 28 U.S.C. § 1983, alleging numerous violations of his constitutional rights. Having thoroughly reviewed and liberally construed plaintiff's complaint, and for the reasons discussed below, the Court must dismiss plaintiff's official capacity claims. The Court must also dismiss the individual capacity claims against defendants Tracy Price, Jeffery Jones, and Lindsey Coffman. However, the individual capacity claims against defendants Jennifer Price, Will Hunter, and Nurse Tracy are sufficient for purposes of initial review, and the Clerk of Court will be directed to issue process on these individuals.[1]

---

[1] The Court believes that plaintiff's claims against the John Doe defendants are also sufficient for purposes of initial review. However, because plaintiff has not identified these defendants by name, they cannot be served with process. Therefore, the Clerk of Court will be directed to issue process on John Does 1-5 at a later time if plaintiff is able to identify the Doe defendants with specificity after initial discovery has occurred.

5

### A. Official Capacity Claims

Plaintiff's official capacity claims against all defendants must be dismissed because they are state employees, and a state is not a person for purposes of § 1983.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983").

Plaintiff alleges that defendants are all employed by the Missouri Department of Corrections. (Docket No. 1 at 2-6). The Missouri Department of Corrections is a state agency of

the State of Missouri. As such, plaintiff's official capacity claims are actually against Missouri, the governmental entity that employs the defendants. However, a state is not a "person" for purposes of § 1983. Therefore, plaintiff has failed to state an official capacity claim.

Furthermore, in order to sue a governmental entity, plaintiff is required to show that the violation of his constitutional rights resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Plaintiff's complaint contains no factual allegations regarding any unconstitutional policy or custom on the part of the Missouri Department of Corrections, nor does plaintiff assert that his constitutional violations resulted from a deliberately indifferent failure to train. For this reason as well, he has failed to state an official capacity claim. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, plaintiff's official capacity claims must be dismissed.

**B. Individual Capacity Claims Against Defendants Will Hunter and Jennifer Price**

Plaintiff's individual capacity claims against Major Hunter and FUM Price regarding his conditions of confinement and his denial of medical care are sufficient for purposes of § 1915 review.

Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To that end, prison officials are

required to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). In order to allege an Eighth Amendment violation, a prisoner must prove that the defendant's conduct rose to the level of a constitutional violation, "by depriving the plaintiff of the minimal civilized measure of life's necessities." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). The conduct of the defendant must also reflect a subjective state of mind that evinces deliberate indifference to the prisoner's health or safety. *Id*.

Plaintiff's allegations against Major Hunter and FUM Price regarding inadequate clothing, bedding, hygiene, and medical care are enough to survive initial review.

### i. Inadequate Clothing

The Eighth Amendment requires prison officials to ensure that inmates receive adequate clothing. *Farmer v. Brennan*, 511 U.S. 825, 831 (1994). The prisoner has the burden of showing that the clothing is inadequate. *Divers v. Dep't of Corrs.*, 921 F.2d 191, 194 (8th Cir. 1990). Clothing has been deemed inadequate, for instance, when inmates are subjected to the rain and cold without protective clothing. *See Chandler v. Moore*, 2 F.3d 847, 848 (8th Cir. 1993) (stating that inmate's allegation that he was forced to stand outside in the rain and cold without adequate clothing was sufficient to preclude § 1915 dismissal); and *Gordon v. Faber*, 973 F.2d 686, 687-88 (8th Cir. 1992) (upholding district court finding that ordering inmates outdoors without hats and gloves in freezing weather violated the Eighth Amendment).

Here, plaintiff has alleged that he was placed on paper gown status by Major Hunter and FUM Price. He claims that this gown left his genitals exposed. He further states that when he met with a mental health doctor, the doctor actually made a complaint on his behalf due to his lack of clothing. These allegations are sufficient for purposes of § 1915 review.

### ii. Inadequate Bedding

There is no absolute Eight Amendment right not to be put in a cell without clothing or bedding. *Williams v. Delo*, 49 F.3d 442, 445-46 (8th Cir. 1995). However, the length of time an inmate spends in such a condition is a factor in determining whether there has been a constitutional violation. *See Goldman v. Forbus*, 17 Fed. Appx. 487, 488 (8th Cir. 2001) (stating there was no constitutional violation in plaintiff's two nights spent on a mattress on the floor near a toilet, since the stay was brief, he was allowed to leave the cell during the day, and he did not suffer any physical harm); and *Blackwell v. Selig*, 26 Fed. Appx. 591, 593 (8th Cir. 2001) (stating that plaintiff "sleeping on the floor on a four-inch thick mattress for five nights did not amount to an unconstitutional condition of confinement").

Here, plaintiff alleges that he was forced to sleep on a concrete floor without any bedding or mattress whatsoever, for over a month. He also asserts that sleeping on the concrete floor injured his back and shoulder. He claims that this was part of the Special Security Order ordered by Major Hunter and FUM Price. Based on the length of time he spent on the floor, the lack of any mattress, and the alleged injuries plaintiff suffered, he has sufficiently alleged inadequate bedding for purposes of § 1983 review.

### iii. Inadequate Hygiene

Personal hygiene items are among the basic human necessities to which prisoners are entitled. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (stating that prisoner's allegation that he had been denied personal hygiene items stated a claim under § 1983). *See also Scott v. Carpenter*, 24 Fed. Appx. 645, 647 (8th Cir. 2001) (stating that basic personal hygiene is "within the minimal civilized measure of life's necessities to which a prisoner is entitled"). As such, the

long-term, repeated deprivation of adequate hygiene supplies violates the Eighth Amendment rights of prison inmates. *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996).

Here, plaintiff alleges that he was not allowed any hygiene for over a month. Specifically, he went without showers for the period in which he was under the Special Security Order enacted by Major Hunter and FUM Price. He further states that his hygienic condition was bad enough that a mental health doctor at the prison made a complaint on his behalf. Based on these facts, plaintiff's inadequate hygiene claim is sufficient for purposes of § 1915 review.

    iv.  **Denial of Medical Care**

The government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

Proving deliberate indifference requires a showing that a "medical provider knew of and disregarded a serious medical need." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). A showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Here, plaintiff has alleged that Major Hunter and FUM Price ordered that he not be assessed by medical staff for his complaints that sleeping on the concrete floor had injured his shoulder and back. He also claims that Major Hunter and FUM Price directed that he not receive medical treatment after allegedly being beaten by the Extraction Team, causing him to bleed from the mouth. These allegations of deliberate indifference are sufficient for purposes of § 1915 review.

**C. Individual Capacity Claim Against Defendant Nurse Tracy**

Plaintiff has adequately alleged a claim of deliberate indifference to medical needs against Nurse Tracy. As noted above, proving deliberate indifference requires a showing that a "medical provider knew of and disregarded a serious medical need." *Phillips*, 437 F.3d at 795. Here, plaintiff has alleged that Nurse Tracy met with him on April 3, 2018, after his alleged beating at the hands of the Extraction Team. He states that Nurse Tracy refused to document his injuries, including an obvious injury that caused blood to come from his mouth. Accepting these allegations as true, plaintiff has sufficiently alleged a claim of deliberate indifference to his medical needs for purposes of § 1915 review.

**D. Individual Capacity Claims Against Defendants John Does 1-5**

Plaintiff has adequately alleged excessive force claims against John Does 1-5, who were allegedly members of a cell extraction team.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in

violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Plaintiff alleges that John Does 1-5, correctional officers who were part of the Extraction Team, came into his cell while he was naked. He further states that all five members beat him while in the cell. This purported beating caused him injury, including a bloody mouth. Plaintiff does not provide much in the way of factual context for this incident. However, for purposes of preservice review, the Court must accept as true all plaintiff's factual allegations and afford him "all reasonable inferences that can be drawn from those allegations." *See Jackson v. Nixon*, 747 F.3d 537, 540-41 (8th Cir. 2014). With that in mind, plaintiff's excessive force allegations against John Does 1-5 are sufficient for purposes of § 1915 review.

Plaintiff has failed, however, to properly identify John Does 1-5 by name. Thus, the Court cannot effectuate service on these individuals at this time. Accordingly, plaintiff will be allowed to engage in initial discovery to ascertain the identity of the members of the Extraction Team so that process may be issued. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (stating that dismissal of a fictitious party is only proper "when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention").

### E. Individual Capacity Claim Against Defendant Tracy Price

Plaintiff's claim against defendant Tracy Price for ordering his cell to be searched every day must be dismissed for failure to state a constitutional violation.

The Fourth Amendment's proscription against unreasonable searches does not apply within the confines of a prison cell, because prisoners do not have a legitimate expectation of privacy in their cells. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). However, the Eighth Amendment protects prisoners from frequent retaliatory cell searches. *See Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991) (stating that "evidence of fear, mental anguish, and misery inflicted through frequent retaliatory cell searches, some of which resulted in the violent dishevelment of [the prisoner's] cell, could suffice as the requisite injury for an eighth amendment claim") and *Rustan v. Rasmussen*, 208 F.3d 218, 2000 WL 227987, at *2 (8th Cir. 2000) (unpublished opinion) (stating that "the Eighth Amendment protects prisoners from the misery inflicted through frequent retaliatory cell searches").

Here, plaintiff states only that "Lt. Price instructed CO1's to search cell every day." There is no allegation of retaliatory motive. Moreover, there is no allegation that he suffered any fear, anguish, or misery as a result of these searches. In short, he has not provided any facts to overcome the general rule that cell searches are permissible in prison and that prisoners do not have a legitimate expectation of privacy in their prison cells. Therefore, plaintiff's individual capacity claim against Tracy Price must be dismissed.

### F. Individual Capacity Claim Against Defendant Jeffery Jones

Plaintiff's claim that Caseworker Jones refused to give him IRRs/grievances to file does not state a constitutional violation.

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at 1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Plaintiff's only allegation against Caseworker Jones is that he "refused to give IRRs/grievances" to plaintiff in order to file on his alleged mistreatment. As noted above, a prison's grievance procedure does not confer upon plaintiff a substantive right. Therefore, defendant Jones' alleged failure to follow the prison's grievance procedure does not amount to a constitutional violation. Accordingly, plaintiff's individual capacity claim against Jeffery Jones must be dismissed.

### G. Individual Capacity Claim Against Defendant Lindsey Coffman

Plaintiff's individual capacity claim against defendant Coffman must be dismissed because plaintiff does not state a constitutional violation. The sole allegation against Officer Coffman is that she covered the lens of the camera on April 3, 2018, when the Extraction Team allegedly beat plaintiff in his cell. Plaintiff does not provide any further factual context to relate

Officer Coffman's role in this incident. Certainly, he does not claim that she took part in any physical assault against him.

The Eighth Amendment does impose upon prison officials the obligation to restore control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). As such, under § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). However, plaintiff does not provide any facts to support a claim that Officer Coffman failed to intervene to protect him. Moreover, plaintiff does not indicate any attempt to assert such a claim. His only factual allegation with regards to Officer Coffman is that she covered the lens of a camera, and this alone does not amount to a violation of his constitutional rights. As such, plaintiff's individual capacity claim against defendant Coffman must be dismissed.

### H. Plaintiff's Religious Diet Claim

Plaintiff alleges that he was forced to eat food that violated his religious diet for a period of two months. In order to assert such a claim under the First Amendment's Free Exercise Clause, a plaintiff must first raise a question of fact regarding whether the prison has placed a substantial burden on his ability to practice his or her religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). "To constitute a substantial burden, the government policy or actions must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Murphy v. Missouri Dep't of Corrs.*, 372 F.3d 979, 988 (8th Cir. 2004).

Plaintiff's conclusory allegations regarding the violation of his religious diet fail to demonstrate that the prison placed a substantial burden on his ability to practice his religion. Plaintiff does not indicate his religion, does not indicate what his religious diet consists of, and does not indicate the importance of his religious diet to the exercise of his religious beliefs. Therefore, plaintiff's religious diet claim must be dismissed.

### I. Plaintiff's Inadequate Nutrition Claim

Plaintiff alleges that when placed on Alternate Meal Status he received inadequate nutrition. Prisoners have a right to receive nutritionally adequate food. *Wishon v. Gammons*, 978 F.2d 446, 449 (8th Cir. 1992). *See also Divers*, 921 F.2d at 194 ("Prison officials must…provide a nutritionally adequate diet"); *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional right retained by the prisoner is the right to an adequate diet"); *Simmons*, 154 F.3d at 807 ("Prison officials must ensure that inmates receive adequate food, clothing, and medical care"). "A plaintiff may demonstrate violation of his constitutional rights by evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016).

Here, plaintiff alleges that he received three 500-calorie meal bags a day. He does not, however, provide any facts showing this was inadequate to his nutritional needs. For example, he does not claim that he went hungry, that he lost weight, or that his health suffered under this meal plan. As such, plaintiff's inadequate nutrition claim must be dismissed.

### J. Plaintiff's Visitation Claim

Plaintiff states that while he was under the Special Security Order, he was not allowed to have visitation.

The lawful incarceration of an inmate brings about the necessary withdrawal or limitation of many rights and privileges, which is justified by the considerations underlying the penal system. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). "[F]reedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). The Supreme Court has not held that any right to intimate association is altogether terminated by incarceration. *Id*. However, substantial deference is accorded to the professional judgment of prison administrators who have the responsibility of defining the legitimate goals of a corrections system and determining the most appropriate means to accomplish them. *Id*. at 132. *See also Bumgarner v. Bloodworth*, 768 F.2d 297, 301 (8th Cir. 1985) (stating that visitation rights are "rights" with respect to which the Supreme Court has given broad discretionary authority to administrators in order to manage their prisons).

For the Due Process Clause to be implicated, an inmate must have been subjected to an "atypical and significant hardship…in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). To that end, for instance, a prisoner does not have a liberty interest in contact visitation. *Phillips*, 320 F.3d at 847. Furthermore, a prisoner's "loss of visitation privileges is within the ordinary incidents of confinement and cannot be considered an atypical and significant hardship." *See Ware v. Morrison*, 276 F.3d 385, 387 (8th Cir. 2002) (stating that suspension of plaintiff's visitation privileges did "not fall outside the expected parameters of incarceration").

Here, plaintiff alleges that "all" his visits were taken, but does not clarify what that means. He does not, for instance, state how long his visits were suspended, and gives only one example of a missed visit. There is no indication that his visitation rights were permanently suspended. Moreover, the minimal facts he has provided do not demonstrate that his loss of

17

visitation constituted an atypical and significant hardship, especially considering his acknowledgement that he had been put on suicide watch and placed in a mental health cell. As such, plaintiff's visitation claim must be dismissed.

### K. Plaintiff's Mail Claim

Plaintiff alleges that he went without mail for over a month. It is well settled that inmates have a right to receive mail, but that right may be limited by prison regulations that are reasonably related to a legitimate penological interest. *Weiler v. Purkett*, 137 F.3d 1047, 1050 (8th Cir. 1998). *See also Griffin v. Lombardi*, 946 F.2d 604, 607 (8th Cir. 1991) (stating that prison inmates have a recognized First Amendment interest in receiving mail, but that prisoners are also subject to the valid regulations of a prison). Here, plaintiff simply states that he was denied mail for over a month. He does establish that this temporary denial was unreasonable given his Special Security Order status that stemmed from his mental health issues. Moreover, he does not indicate that he was kept from getting legal mail, or that his right of access to courts was implicated. *See Weiler*, 137 F.3d at 1051 (stating that a prison policy that obstructs privileged inmate mail may violate the inmate's right of access to the courts). As such, plaintiff's mail claim must be dismissed.

### L. Plaintiff's Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 2). This motion will be denied at this time.

"A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). A district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court

will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips*, 437 F.3d at 794.

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be unduly complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 2) is **DENIED at this time**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon defendants Will Hunter and Jennifer Price in their individual capacities as

to plaintiff's claims of inadequate clothing, inadequate bedding, inadequate hygiene, and denial of medical care.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon defendant Nurse Tracy on plaintiff's claim of denial of medical care.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **not** issue process or cause process to issue upon defendants John Does 1-5 at this time. The Court will direct process to be issued at a later time if plaintiff is able to identify these defendants with specificity after initial discovery has occurred.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against all defendants are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's individual capacity claims against defendants Tracy Price, Jeffery Jones, and Lindsey Coffman are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's claims regarding his religious diet, inadequate nutrition, visitation, and mail are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

A separate order of partial dismissal will be entered herewith. *See* 28 U.S.C. § 1915(e)(2)(B).

Dated this 25th day of February, 2019

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE